Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Connor H. Shea, Esq.
Nevada Bar No. 14616
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
*Proposed Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 18-10792 |
| Lucky Dragon Hotel & Casino, LLC, | Chapter 11 |
| Debtor. | Hearing Date: OST Pending |
| | Hearing Time: OST Pending |

**MOTION FOR AN ORDER AUTHORIZING MAINTENANCE**
**OF EXISTING BANK ACCOUNTS AND RELATED RELIEF**

Lucky Dragon Hotel and Casino, LLC, the debtor and debtor-in-possession in the above captioned Chapter 11 Bankruptcy (the "**Debtor**"), hereby moves this Court (the "**Motion**") for the entry of an order authorizing maintenance of existing bank accounts. In support of this Motion, the Debtor respectfully represents as follows:

**BACKGROUND**

1. On February 16, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). The Debtor continues to operate

1

4821-6560-8795, v. 2

its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Lucky Dragon Hotel & Casino is the first casino resort in Las Vegas designed from the ground up to create an authentic Asian cultural and gaming experience. Opened in November 2016, the casino property originally started with: (i) a 27,500 square foot, two-level casino; (ii) 37 gaming tables and 287 slot machines; (iii) 203 hotel rooms, including 14 suites and a penthouse; (iv) 4 Asian inspired restaurants; (v) 3 bars and lounges; and (vi) a first class spa (collectively, the "**Resort**"). Currently, the enterprise employs 98 people and is primarily operating only the hotel and limited food and beverage service; however, when fully operating, it is projected the Resort will employ 475 people.

3. The Lucky Dragon anticipates that once its operation is stabilized through either the reorganization or sale of the Property, it will be profitable by capitalizing on the underserved Asian gaming community and customers, as well as the growth of the local market on the North Strip. The Debtor's initial core customers consisted of the local Las Vegas Asian and non-Asian market, the regional Asian population, including Los Angeles and San Francisco, and the International Asian visitor, including travelers from Mainland China, Taiwan and Canada. Indeed, nearly 5 million Asian Americans live in California alone, and 200,000 more live in Las Vegas. The Debtor anticipates that with a proper marketing budget and the sufficient stabilization of its operations, coupled with the growth of and development of the North Strip corridor, including the expansion of the Las Vegas Convention Center, the Resort will flourish, particularly in the local Las Vegas market.

4. The Lucky Dragon Hotel and Casino primarily consists of 2 entities. Lucky Dragon, LP, which owns the real estate and improvements at 300 West Sahara Avenue, Las Vegas, Nevada (the "**Property**"), and employs 68 full time and 30 part-time people. The gaming, hotel and resort operations are then owned and controlled by the Debtor, the Lucky Dragon Hotel and Casino, LLC, which also leases the 98 employees from Lucky Dragon, LP. The capital structure between the companies includes approximately 179 individuals who invested $500,000 each, or $89,500,000 in Lucky Dragon, LP, through the Immigrant Investor Program, or what is commonly referred to as EB-5 investments.[1] In addition, the enterprise is encumbered by 2 loans from Snow Covered Capital, LLC ("**Snow Covered**"), including an initial $30,000,000 construction loan facility, as well as a $15,000,000 revolving loan (collectively, the "**Snow Covered Loans**"). The Loans, in turn, are secured by a deed of trust dated May 3, 2016, and recorded against the Property. As of the date hereof, Lucky Dragon Holdings owes Snow Covered approximately $48,877,969.15.

5. On September 1, 2017, Snow Covered recorded a Notice of Default with the Clark County Recorder, starting the foreclosure process with respect to the Property. As of the Petition Date, a foreclosure sale is set for February 22, 2018. In order to reorganize, preserve 98 jobs, facilitate the orderly payoff of Snow Covered, and the goodwill of the Resort, the Debtor filed its Chapter 11 case. Looking forward, the Debtor anticipates a quick auction, which will pay Snow Covered in full, provide fresh capital, and reenergize the project, such that it can become profitable and expand into full operation as quickly as possible.

---

[1] An EB-5 visa is an opportunity for qualified foreign investors to obtain a Green Card for themselves or their families through the Immigrant Investor Program, which was established by Congress in 1992. The EB-5 program authorized the U.S. Citizenship and Immigration Services to grant Green Cards to foreign investors who help create or save jobs for U.S. citizens. In this case, the Debtor and Lucky Dragon, LP qualified for the EB-5 program.

3

4821-6560-8795, v. 2

6. Indeed, the Debtor filed its case in good faith, to preserve jobs, pay its creditors and provide certainty to the market with respect to the Property and the Resort. In order to facilitate its quick emergence from bankruptcy, the Debtor retained Spectrum Gaming Capital ("**SGC**") as its financial advisor. Prior to the filing, the Debtor, through SGC, started actively showing the Property and the Resort to interested parties, many of whom expressed serious interest in the assets and in amounts that would pay Snow Covered in full. Therefore, the Debtor anticipates running a quick, but thoughtful auction of the Property and Resort, so that not only are Snow Covered's secured claims are protected, but unsecured creditors are also given an opportunity to recover for their claims, and EB-5 investors are given an opportunity to preserve their investments, to the extent each are possible. Accordingly, the Debtor believes a Chapter 11 sale process in this case is the best opportunity for all interested parties to preserve and maximize the value of the Property and the Resort.

## JURISDICTION

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8. The statutory predicates for the relief requested herein are sections 105, 345, 363, 1107, and 1108 of the Bankruptcy Code.

## RELIEF REQUESTED

9. By this Motion, the Debtor seeks an order authorizing maintenance of its existing bank accounts. Specifically, prior to filing, the Debtor was subject to regular audits from the Nevada Gaming Control Board. It will likely be subject to continuing audits

4

4821-6560-8795, v. 2

postpetition. Accordingly, designating these bank accounts as debtor-in-possession accounts is in the best interests of a smooth transition into Chapter 11.

**BASIS FOR RELIEF**

10. The Office of the United States Trustee established certain operating guidelines for debtors-in-possession in order to supervise the administration of Chapter 11 cases. These guidelines require a Chapter 11 debtor to, among other things: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks for all debtor-in-possession accounts which bear the designation "**Debtor-In-Possession**," the bankruptcy case number, and the type of accounts. As set forth below, the Debtor submits that authorizing it to open its old accounts to transfer the funds therein to new, debtor-in-possession accounts is appropriate here.

**A. Maintenance of Existing Bank Accounts**

11. As of the Petition Date, in the ordinary course of business, the Debtor maintained the bank accounts listed on **Exhibit A**, attached hereto, through which it managed cash receipts and disbursements (the "**Bank Accounts**").

12. The Debtor routinely deposits, withdraws, and otherwise transfers funds to and from the Bank Accounts. The Debtor believes that the Bank Accounts are in financially stable banking institutions with The Federal Deposit Insurance Corporation ("**FDIC**"), The Federal Savings and Loan Insurance Corporation ("**FSLIC**") insurance or other appropriate government-guaranteed deposit protection insurance.

5

4821-6560-8795, v. 2

13. The Debtor therefore requests that the Bank Accounts be designated debtor-in-possession accounts, and that the company be authorized to continue maintaining them as debtor-in-possession accounts. Importantly, it would cause a significant interruption to the Debtor's business to close its existing accounts and open brand new debtor-in-possession accounts.

14. As part of this relief, the Debtor requests that the bank at which the Bank Accounts are maintained (the "**Bank**") be authorized and directed to continue to service and administer the Bank Accounts as accounts of the Debtor, as debtor-in-possession, without interruption and in the usual and ordinary course, and to accept and process deposits into the Bank Accounts, in whatever form received.

15. As part of the foregoing relief, the Bank also should be authorized and directed to accept and honor all representations from the Debtor as to which checks, drafts, automated clearing house transfers, or other electronic funds transfers should be honored or dishonored consistent with any order(s) of this Court, whether the checks, drafts, automated clearing house transfers, or other electronic funds transfers are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is or is not authorized by any order(s) of the Court.

16. Finally, the Bank should be prohibited from offsetting, freezing, or otherwise impeding the use or transfer of, or access to, any funds deposited by the Debtor in the Bank Accounts before or after the Petition Date on account of or by reason of any claim (as defined in section 101(5) of the Bankruptcy Code) of the Bank against the Debtor that arose before the Petition Date, and any checks, drafts, automated clearing house transfers, and other electronic

6

4821-6560-8795, v. 2

funds transfers drawn or ordered by the Debtor on the Bank Accounts subsequent to the Petition Date should be timely honored by the Bank notwithstanding any such claim the Bank may hold against the Debtor.

17. In other cases, it has been recognized that the strict enforcement of bank account closing requirements does not serve the rehabilitative purposes of Chapter 11. Accordingly, courts have waived such requirements and replaced them with alternative procedures that provide the same protections. See, e.g., In re Washington Group Int'l, Inc., Case No. 01-31627 (Bankr. D. Nev. May 15, 2001); In re Nat'l Airlines, Inc., Case No. 00-19258-LBR (Bankr. D. Nev. Dec. 7, 2000); In re Einstein/Noah Bagel Corp., Case Nos. 00-0447-ECF-CGC and 00-0448-ECF-CGC (Bankr. D. Ariz. Apr. 28, 2000); In re Pegasus Gold Corp., Case No. 98-30088-GWZ (Bankr. D. Nev. Jan. 16, 1998).

## NOTICE

18. Notice of this Motion has been given to: (i) the United States Trustee; (ii) the Banks; and (iii) certain governmental agencies including the Internal Revenue Service, the Clark County Assessor, the Clark County Treasurer and the Nevada Department of Taxation. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

///
///
///
///
///

4821-6560-8795, v. 2

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit B**: (i) authorizing the opening of the Bank Accounts and the transfer of the funds therein to new accounts; and (ii) granting such other and further relief as is just and proper.

Dated this 16th day of February, 2018.

Respectfully Submitted,

/s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Connor H. Shea, Esq.
Nevada Bar No. 14616
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
*Proposed Attorneys for the Debtor*

8

4821-6560-8795, v. 2