Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Connor H. Shea, Esq.
Nevada Bar No. 14616
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
*Proposed Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| In re: | ) | Case No.: 18-10792-LED |
| | ) | |
| Lucky Dragon Hotel & Casino, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

STATE OF NEVADA        )
                       )   ss:
COUNTY OF CLARK        )

**DECLARATION OF ROBERT HELLER IN SUPPORT**
**OF BANKRUPTCY FILING AND FIRST DAY MOTIONS**

Robert Heller, the Chief Executive Officer of Spectrum Gaming Capital ("**SGC**"), the proposed financial advisor to Lucky Dragon Hotel & Casino, LLC (the "**Debtor**"), being duly sworn, deposes and says:

1. I am over the age of 18, mentally competent and make this declaration in support of the voluntary Chapter 11 bankruptcy filing of Lucky Dragon Hotel & Casino, LLC. I make this Declaration to the best of my knowledge, based upon my participation in the management and oversight of the efforts to sell the Debtor's assets (the "**Casino Resort**"), inclusive of the land located

4843-6998-5883, v. 1

1  at 300 West Sahara Avenue, Las Vegas, Nevada (the "**Property**"), which is owned by Lucky Dragon, LP.

2.  I have significant investment banking and capital markets expertise, particularly in the gaming and hotel casino sector. I have been an investment banker in real estate finance since 1981 and have more than 33 years of experience focusing on financing, capital raising and merger and acquisition work (including sales of individual casino and hotel properties) relating to the gaming, lodging and leisure sectors. I performed these services in the employ of major financial institutions such as Salomon Brothers, Bear Stearns, Lehman Brothers and UBS, and in my own firms, Heller Gaming & Leisure, and Spectrum Gaming Capital. I worked on gaming, lodging and leisure industry transactions ranging from single assets, to portfolios, to companies throughout the United States and abroad. I also perform work as an expert in matters of litigation in this field and acted as an expert several times.

3.  Over the course of the last 90 days, I managed the marketing efforts of the Property and the Casino Resort, including meeting and showing the assets to approximately 100 potential suitors. The interested parties for the assets include hotel and casino operators, private equity firms, hotel operators and businesses, and family offices. Each of the potential transaction parties signed a non-disclosure agreement, so discussing their identities is currently prohibited.

4.  The activities of SGC include telephonic discussions, in-person meetings, showings of the Property and the Casino Resort, as well as due diligence and analyses with potential buyers. Potential transaction partners visited the Property regularly, including visits as recently as January 31, 2018. Based upon my experience and in light of the specific facts and circumstances of the Debtor's situation and the Chapter 11 Case, I believe that adequate efforts were made since SGC's involvement to market the Debtor's assets for sale and to solicit offers to purchase the business as a going concern.

4843-6998-5883, v. 1

5.      Based on SGC's continuing assessment of the Debtor's valuation with respect to ongoing changes in the composition of Debtor's gaming operations and hotel room sales, and our discussions with numerous counterparties, SGC believes that the sale of the Company as a going concern to one of the current suitors is likely to provide significantly more value to creditors than in a liquidation or foreclosure sale. Given the competitive dynamics and the current upswing in the economy, coupled with the significant projects under development on the North Strip Corridor in Las Vegas, I believe an auction of the Casino Resort and the Property will generate the greatest value for the Debtor's estate, creditors and parties-in-interest.

6.      Importantly, I believe the current foreclosure sale of the Property on February 22, 2018 is chilling the bidding, and ready willing and able buyers or financiers are waiting to see the results of foreclosure before making meaningful or serious offers for the Property or the Casino Resort. Therefore, if the foreclosure sale is stayed, and a meaningful sale process of the Debtor's assets can be conducted, including the sale of the Property, I believe the secured debt of the Debtor will be paid in full, and additional value will be created for creditors generally, including unsecured claims and equity holders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 20th day of February, 2018.

/s/ Robert Heller
    Robert Heller