Nicholas Strozza, Assistant United States Trustee
State Bar No. CA 117234
Edward M. McDonald Jr., Trial Attorney
State Bar No. NY 4126009
*edward.m.mcdonald@usdoj.gov*
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
300 Las Vegas Boulevard, So., Suite 4300
Las Vegas, Nevada 89101
Tel.: (702) 388-6600, Ext. 234
Fax: (702) 388-6658

Attorneys for the United States Trustee for Region 17
TRACY HOPE DAVIS

E-Filed: February 20, 2018

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

Lucky Dragon Hotel & Casino, LLC,

Debtor.

Case No: BK-S-18-10792-LED

Chapter 11

Date: February 21, 2018
Time: 3:00 p.m.
Place: Courtroom 3, 3rd Flr., Foley Fed. Bldg.

**THE UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO DEBTOR'S FIRST DAY MOTIONS [ECF NOS. 4 & 5]**

To the Honorable LAUREL E. DAVIS, United States Bankruptcy Judge**:**

Tracy Hope Davis, United States Trustee for Region 17 (the "United States Trustee"), by and through her undersigned counsel, hereby presents these objections (the "Omnibus Objection") to the following "first day" motions filed by the captioned debtor Lucky Dragon Hotel & Casino, LLC (the "Debtor"):

- *Debtor's Motion Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107and 1108 and Rules 4001(b), 6003 and 6004 of the Federal Rules of Bankruptcy Procedure for Entry of an Order (A)(I) Authorizing the Use of Cash, Including Cash Collateral, (II) Finding That the Interests of the Prepetition Lender and Any Other Purportedly Secured Party Are Adequately Protected, and (III) Granting Related Relief, or (B) Alternatively, Authorizing Debtor to Surcharge the Prepetition Collateral* [ECF No. 4] (the "Cash Collateral Motion"); and,

- *Motion for the Entry of an Order Authorizing, But Not Directing, the Debtor to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee Benefits, and (III) Continue Employee Wages and benefits Programs* [ECF No. 5] (the "Wages Motion").[1]

The Omnibus Objection is supported by the following memorandum of points and authorities and any argument the Court may permit on the Omnibus Objection.

## I. MEMORANDUM OF POINTS AND AUTHORITIES

### A. Introduction

The Debtor's requests for relief in the aforementioned Motions should either be (a) denied or (b) limited to only emergency relief to permit the Debtor to sustain business operations. As to each of the Motions, the Debtor has failed to meet its evidentiary burden for the relief requested. A meeting of creditors pursuant to 11 U.S.C. § 341 has not been held. A creditors committee has not yet been formed. Bankruptcy schedules, the Statement of Financial Affairs, and other required documents have not been filed. Therefore, the Court should either sustain the United States Trustee's Omnibus Objection or adjourn the hearing on these Motions to a later date to allow any creditors committee or other creditors a meaningful opportunity to evaluate the Motions.

### B. Background Facts and Procedural Posture.

1. On February 16, 2018, the Debtor, Lucky Dragon Hotel & Casino, LLC, filed a voluntary Chapter 11 bankruptcy petition ("Petition"). [ECF No.1].[2]

---

[1] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the Omnibus Objection contains factual assertions predicated upon statements made by Debtor, any of its current or former agents, attorneys, professionals, officers, directors or employees, the United States Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

[2] Unless otherwise noted, "ECF No." refers to the main bankruptcy docket for case number, BK-S-18-10792-LED.

2. The Debtor's representative and managing member of Eastern Investments, LLC is Andrew S. Fonfa. [ECF No. 1, p. 4 of 23; § 17].

3. Mr. Fonfa has not filed a declaration, and the declaration of Bing O'Peek was only filed this morning. [*See* ECF No. 31; *see generally* Case Docket].

4. No trustee has been appointed in the Debtor's case. [*See generally* Case Docket].

5. No official committee of unsecured creditors has been appointed. [*Id*.].

6. On February 16, 2018, the Debtor filed various first day Motions, including those described above. [*See* ECF Nos. 4, 5 & 6].

7. On February 16, 2018, the Debtor filed *Ex Parte* Motions for Order Shortening Time ("OST") with regard to the first day Motions (the "OST Motions"). [See ECF Nos. 7 - 12].

8. On February 16, 2018, the Court granted the OST Motions and issued OSTs setting the initial hearings on the first day Motions for February 21, 2018, at 3:00 p.m. [*See* ECF Nos. 16 - 18].

9. The date first set for the meeting of creditors is scheduled for March 22, 2018. [*See* ECF No. 15].

## II. ARGUMENT

10. Four principles for Courts to consider with regard to first day motions are:

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.
>
> Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.
>
> Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.

> Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

*In re The Colad Group, Inc.*, 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

**A. The Debtor's Cash Collateral should be denied.**

11. The Cash Collateral Motion seeks authority to use cash collateral, specifically the Debtor's post-petition revenues that are subject to the security interest of Snow Covered Capital , LLC ("Lender"). [ECF No. 4, pp. 3-5 of 17].

12. The proposed order attached to the Cash Collateral Motion proposes interim relief until a final hearing. [ECF No. 4-3]. It contains a typographical error, in that it states the Cash Collateral Motion was filed on January 31, 2018. [*See* ECF No. 4-3, p. 3 of 8; line 27].

13. The Cash Collateral Motion references a declaration of Bing O'Peek, which was filed less than 3 hours before the first day objection deadline. [*See* ECF No. 4, p. 2 of 17; *see* ECF No. 31; *see generally* Case Docket].

14. The Cash Collateral Motion should be denied, because it is based on a 10-week, projected budget, attached as Exhibit A to the motion, which lacks foundational, evidentiary support. The O'Peek Declaration makes a passing reference to having assisted in preparing the budget, and it being a good faith estimate, without further discussion about the nature and historical bases of the necessary operating expenses of the Debtor. [ECF No. 31, p. 7 of 10; ¶ 15].

15. Any replacement liens should be subordinate to certain administrative "carve-outs." Any order granting interim relief for the use of cash collateral should provide a "carve-out" for quarterly fees due pursuant to 28 U.S.C. § 1930(a); reasonable fees and expenses incurred by any trustee appointed under 11 U.S.C. § 1104 or any committee appointed under 11 U.S.C. § 1102; reasonable fees and expenses incurred by any professionals for such trustee or committee, employed under 11 U.S.C. §§ 327 and 1103(a); and fees and expenses of a Chapter 7 trustee and his or her professionals, if the case is converted to Chapter 7.

16. Accordingly, the Cash Collateral Motion should be denied, or granted on an interim basis to the extent necessary to avoid immediate and irreparable harm, pursuant to Fed.R.Bankr.P. 6003.

**B. The Wages Motion should be denied.**

17. In the Wages Motion, the Debtor states that it employs 98 employees. [ECF No. 5, p. 2 of 15, ¶ 4].

18. The Debtor estimates that "[t]he total estimated amount of [pre-petition] Wage Obligations that will have accrued, but remain unpaid, as of the Petition Date is approximately $50,000." [ECF No. 9, p.4, ¶ 9.]

19. The Debtor states that "it owes the Employees at least $195,000" in prepetition wages. [*See* ECF No. 5, p. 6 of 15; ¶ 15].

20. The Debtor states that it "does not believe any of the Employees are owed more than the $12,850.00 priority cap set forth in section 507(a)(4) of the Bankruptcy Code." [ECF No. 5, p. 6 of 15; ¶ 16]. The Debtor submitted a proposed court order to authorize the payment of prepetition, unpaid wages and benefits, not exceeding the $12,850 cap set forth in 11 U.S.C. §§ 507(a)(4) and (5). [*See* ECF No. 5-1, p. 3 of 6; lines 13-16].

21. The Wages Motion is predicated on 11 U.S.C. §§ 105(a), 363(b)(1), 507(a)(4), 507(a)(5), 541(b), 1129(a)(9)(B) and Fed.R.Bankr.P. 6003. As the Debtor's request for relief in the Wages Motion is predicated on such authorities, it should be denied.

22. Ninth Circuit case law casts considerable doubt on whether the Necessity of Payment doctrine applies outside the context of railroad reorganizations and otherwise survived the enactment of the Bankruptcy Code. *See In re B & W Enterprises, Inc.*, 713 F.2d 534, 537 (9th Cir. 1983) ("The Necessity of Payment Rule was created for and has been applied only to railroad cases. Absent compelling reasons, we deem it unwise to tamper with the statutory priority scheme devised by Congress in the 1978 Act."). With respect to the argument that a bankruptcy court's general equitable powers authorize such relief, the Ninth Circuit observed, "[t]here is no indication that Congress intended the courts to fashion their own rules of super-priorities within any given priority class." *Id.*; *see also Willms v. Sanderson*, 723 F.3d 1094, 1103 (9th Cir. 2013) ("A bankruptcy court's equitable powers 'must and can only be exercised within the confines of the Bankruptcy Code.'") (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)).

23. Moreover, the "general rule is that a distribution on prepetition debt in a Chapter 11 case should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstance." *See In re Airbeds, Inc*., 92 B.R. 419, 422 (B.A.P. 9th Cir. 1988).

24. The Wage Motion does not articulate extraordinary circumstances nor provides sufficient evidence, to support the emergency relief it seeks.

25. Debtor only filed the O'Peek Declaration 3 hours before the objection deadline. [*See* ECF No. 31]. The Wages Motion does not describe, nor is it supported with evidence of, the amount of unpaid, prepetition wages and benefits per employee. The Motion does not describe, nor is it supported with evidence of, whether and to what extent any expenses are actual, ordinary, and necessary, nor the amount of such unpaid expenses to be reimbursed per employee. The Debtor does not contend nor provide evidence that any of its employees have threatened to resign or whether such employees can be replaced. [*See* ECF No. 31].

26. The O'Peek Declaration is based on improper opinion testimony, speculation, or erroneous information, and otherwise contains statements lacking in foundation, as follows: "The Debtor believes that all Employee wages and benefits are vital to the Debtor's business, and seeks authority to maintain and make payments to the Employees in order to prevent immediate and irreparable harm to the Debtor's business. The Debtor <u>believes</u> if the Employees are not paid, they will not continue working for the Debtor. [*See* ECF No. 31, p. 7 of 10; ¶18 (emphasis added)]. In addition, in the Wages Motion the Debtor merely speculates, "that without the requested relief, its Employees may seek alternative opportunities, perhaps with the Debtor's competitors. Such a development would deplete the Debtor's workforce, hindering the Debtor's ability to successfully reorganize." [*See* ECF No. 31, p. 14 of 15; ¶ 32].

27. Accordingly, the Debtor has not provided sufficient evidence of "immediate and irreparable harm" to warrant relief under Fed.R.Bankr.P. 6003.

28. The proposed order would grant discretion to the Debtor to pay prepetition wage and benefits obligations, up to the statutory cap of $12,850 set forth in set forth in 11 U.S.C. §§ 507(a)(4) and –(5). Such blanket authority should be denied.

29. Finally, the proposed order alludes to relief under Fed.R.Bankr.P. 6003, but, the proposed order is silent on whether it proposes interim relief in the first 21 days of the case, until a final hearing. [*See* ECF No. 5-1, Exhibit 1.] Relief under the Wage Motion, if granted, should be on an interim basis.

30. For the reasons stated above, the relief requested by the Debtor in its Wages Motion should be denied.

## III. CONCLUSION

31. In view of the shortened notice provided to creditors and the Debtor's failure to establish a sufficient evidentiary record for the relief sought, the Motions should either be denied in the entirety or any relief granted should be limited for the Debtor to sustain operations and to provide adequate protection, if any. Alternatively, the Motions should be adjourned until a later date. The adjournment would permit parties that were not provided sufficient notice and any committee the opportunity to be heard on the Motions.

32. If the Court grants any of the relief sought in the Motions, the United States Trustee requests that any committee appointed under Section 1102 be permitted the right to reconsider the Motions.

33. The United States Trustee reserves all rights to object to the final relief granted to these Motions.

**WHEREFORE**, the United States Trustee requests to Court to sustain her Omnibus Objection; and grant such other relief as is just under the circumstances.

Dated: February 20, 2018

Respectfully Submitted,
TRACY HOPE DAVIS
UNITED STATES TRUSTEE
By: /s/ *Edward M. McDonald Jr.*
Edward M. McDonald Jr.
Trial Attorney for the United States Trustee