Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
Facsimile:  (702) 873-9966
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

*Attorneys for the EB-5 Investors Group 2*

*Electronically Filed April 30, 2018*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>Lucky Dragon Hotel & Casino, LLC<br><br>Debtor. | Lead Case No.:  18-10792-led<br><br>Joint Administration with:<br>Bankr. Case No.: 18-10850-led<br><br>Chapter 11 |
| In re<br><br>Lucky Dragon, LP,<br><br>Debtor. | **EB-5 INVESTORS' OMNIBUS OPPOSITION TO DEBTORS'**<br><br>**(A) MOTION FOR ENTRY OF AN ORDER APPROVING THE BID PROCEDURES IN CONNECTION WITH THE SALE OF REAL PROPERTY [ECF NO. 240]; AND**<br><br>**(B) APPLICATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 327, 328, 329, 331 AND FED. R. BANKR. P. 2014 AND 2016 AUTHORIZING THE EMPLOYMENT AND RETENTION OF INNOVATION CAPITAL AS FINANCIAL ADVISORS TO THE DEBTORS [ECF NO. 245]**<br><br>**Hearing Date:  May 14, 2018**<br>**Hearing Time: 9:30 a.m.**<br><br>**Place: Foley Federal Building, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101, Courtroom 3** |

EB-5 Investors Group 2 (the "EB-5 Investors"), by and through its attorneys of record, McDonald Carano, LLP, hereby file this opposition (the "Opposition") to Debtors' (A) *Motion for Entry of an Order Approving the Bid Procedures in Connection with the Sale of Real Property* [ECF No. 240]*; and* (B) *Application for Entry of an Order Under 11 U.S.C. §§ 327, 328, 329 and 331 and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Employment and Retention of Innovation Capital as Financial Advisors to the Debtors* [ECF No. 245] filed by Lucky Dragon Hotel & Casino, LLC and Lucky Dragon, LP (collectively the "Debtors").

This Opposition is made and based upon the following Memorandum of Points and Authorities, the papers and pleadings on file in this case, and arguments of counsel at the hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A. Facts**

1. McDonald Carano LLP represents approximately 118 EB-5 Investors concerning the EB-5 investment in the Lucky Dragon LP, which helped to fund the construction and startup of the Lucky Dragon hotel and casino in Las Vegas (the "Project").

2. U.S. Citizenship and Immigration Services ("USCIS") describes the EB-5 Immigrant Investor Program as follows:

USCIS administers the EB-5 Program. Under this program, entrepreneurs (and their spouses and unmarried children under 21 are eligible to apply for a green card (permanent residency) if they:

- Make the necessary investment in a commercial enterprise in the United States; and
- Plan to create or preserve 10 permanent full-time jobs for qualified U.S. workers.

This program is known as EB-5 for the name of the employment-based fifth preference visa that participants receive.[1]

Congress created the EB-5 Program in 1990 to stimulate the U.S. economy through job creation and capital investment by foreign investors. In 1992, Congress created the Immigrant Investor Program, also known as the Regional Center Program. This sets aside EB-5 Visas for participants who invest in commercial enterprises associated with regional centers approved by USCIS based on proposals for promoting economic growth. *Id.*

---

[1] https://www.uscis.gov/eb-5

3. In connection with the Project the Developer prepared and submitted to the EB-5 Investors certain key documents, including a Comprehensive Business Plan, June 2012 ("CBP"), a Certificate of Limited Partnership whereby the EB-5 Investors would be limited partners in the Lucky Dragon LP, a Limited Partnership Agreement, and a Confidential Private Offering Memorandum ("CPOM").

4. The CBP describes the Project as being comprised of a 200-room, 144,200 square foot hotel, a 20,000 square foot casino, 25,170 square feet of restaurant, bar and cabaret space, 2,280 square feet of retail space and a 1,900 square foot spa and fitness center.

5. The CBP and CPOM both describe plans to finance the Project entirely from EB-5 investor capital contributions, and the SBP pro forma forecasts revenues in the first year of operations as follows: room revenues of $8.18 million, $19.5 million from food, beverage, retail, spa and other non-gaming revenue, and $94.5 million in gaming revenue.

6. Based on the above representations and materials, a total of 179 EB-5 Investors each invested $550,000, totaling $98,450,000. Of that amount, $89,500,000 was used toward the initial development, construction and operation of the Project, which had an initial total budget of $115,000,000, including $77,000,000 in construction costs. $8,950,000 was an administrative fee paid to the general partner of the Lucky Dragon LP.

7. Construction of the Project was completed in December of 2016. Actual construction expenditures were approximately $126,725,000, an increase of 65% from the initial budgeted amount. Total revenues for the first year of operations totaled $35,197,000, just 22% of forecasted revenues. Gaming and some food and beverage operations were suspended in 2018.

8. Notably, the EB-5 fundraising efforts ceased in the Spring of 2017 and current Project financing amounts total $174.9 million, comprised of $89.5 million from the 179 EB-5 Investors, an undisclosed $45 million senior loan from Snow Covered Capital, LLC ("SCC"), and $40.5 million in "sponsor debt" ($18 million land contribution, and $22.4 million in working capital).

9. USCIS policy requires the denial or revocation of an existing I-526 petition, and the EB-5 Investor must file a new I-526 petition, if there has been a "material change" from the

1  original business plan. The standard by which the USCIS will determine whether the changes noted rise to the level of "material change" is set forth in the USCIS Policy Manual, which defines material change as follows: "A change is material if the changed circumstances would have a natural tendency to influence or are predictably capable of affective the decision." *See Kungys v. United States*, 485 U.S. 759, 770-772 (1988) (defining materiality in the context of denaturalization).

10. The major exception to the above rule is where the EB-5 Investor has already obtained conditional permanent residence ("CLPR"), at which time they can file their I-829 petition (the next stage of the permanent residency process) and they will not be denied solely on account of a material change.

11. Of the 179 EB-5 Investors who are seeking permanent residency in the United States, only a handful have achieved CLPR and filed I-829 petitions. A slightly larger number have SLPR but no I-829 petition yet filed. The great majority of EB-5 Investors have yet to obtain CLPR and some those EB-5 Investors are still awaiting immigrant visa processing for USCIS approval of their I-526 petitions (the initial stage of EB-5 permanent residency).

12. The EB-5 Investors are currently working with their own third-party funding sources to potentially fund a plan that would restructure the debtor in a way that preserves the EB-5 Investors' equity stake *and* continues the USCIS EB-5 Program to maximize the potential of permanent residency for the EB-5 Investors.

**B. Argument**

***i. Objection to Motion for Entry of an Order Approving the Bid Procedures in Connection with the Sale of Real Property [ECF No. 240]***

13. If the Debtors sell the property under 11 U.S.C. § 363 the EB-5 Investors will lose their investments as well as their limited partnership interest and equity in the Project.

14. Moreover, it is possible that a § 363 sale will constitute a "material change" under USCIS policy, meaning the great majority of EB-5 Investors will have to start the process over and/or potentially lose hope of permanent residency.

15. Such a result is devastating at this early stage of this Chapter 11 case, especially because counsel for the EB-5 Investors have been working diligently with a third-party investor on potential plan of reorganization that would at least leave the EB-5 Investors with the argument that such a restructuring does not constitute a "material change".

16. If the EB-5 Investors contribute new value to a plan that re-opens the casino, restaurants and spa/fitness center, re-creating and re-deploying new jobs, it may avoid the argument from USCIS that there was a "material change" to the initial CBP.

17. As such, the EB-5 Investors (and largest stakeholders in these cases) respectfully oppose a § 363 sale and ask that the EB-5 Investors, Debtors, Unsecured Creditors Committee, and others, be given the opportunity to prepare and present a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable period of time.

18. If this Court approves the bidding procedures, the EB-5 Investors reserve their rights upon Debtors' filing a sale motion.

### ii. Application for Entry of an Order Under 11 U.S.C. §§ 327, 328, 329 and 331 and Fed. R. Bankr. P. 2014 and 2016 Authorizing the Employment and Retention of Innovation Capital as Financial Advisors to the Debtors [ECF No. 245]

19. The EB-5 Investors do not oppose the employment and retention of Innovation Capital as financial advisors to the Debtors; however, they do oppose the terms and conditions of employment.

20. First, Innovation Capital should not enjoy exclusive rights, as the "broker", to all transactions in this case.

21. Second, if Innovation Capital is not responsible for bringing a buyer or restructuring partner to a deal that is ultimately approved by this Court, it should not be compensated.

22. Finally, Innovation Capital should be paid a reasonable sum upon achieving a result that is beneficial for the stakeholders in this case.

23. The EB-5 Investors are currently working with their own investor to fund a plan of reorganization that maximizes value for the creditors and allows the EB-5 Investors to maintain

their equity and goal of permanent residency. Innovation Capital should not be positioned to obstruct this opportunity as the exclusive "broker" to the debtor.

24. Further, to the extent that Innovation Capital is not involved in that transaction, and it is ultimately approved by this Court, it should receive no compensation.

25. Finally, the compensation for a successful transaction should be reasonable.

**C. Conclusion**

The EB-5 Investors respectfully request that the Court deny or modify the relief requested by the Debtors as set forth above.

DATED this 30th day of April, 2018.

MCDONALD CARANO LLP

By: */s/ Ryan J. Works*
Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq., (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

*Attorneys for the EB-5 Investors Group 2*

4847-2053-4369, v. 1