1    Richard F. Holley, Esq. (NV Bar No. 3077)
     Email: rholley@nevadafirm.com
2    Andrea M. Gandara, Esq. (NV Bar No. 12580)        E-filed on: September 19, 2018
     Email: agandara@nevadafirm.com
3    HOLLEY DRIGGS WALCH
     FINE WRAY PUZEY & THOMPSON
4    400 South Fourth Street, Third Floor
     Las Vegas, Nevada 89101
5    Telephone:    702/791-0308
     Facsimile:    702/791-1912
6    *Attorneys for PDS Gaming LLC and PDS Acquisition, LP*

7                     **UNITED STATES BANKRUPTCY COURT**

8                         **DISTRICT OF NEVADA**

9    In re:                                    Lead Case No. 18-10792-LEB

10   Lucky Dragon, Hotel & Casino, LLC,        Jointly Administration with
                                               Case No.      18-10850-LEB
11                         Debtor,
                                               Chapter 11
12
     In re:                                    **RESPONSE TO DEBTORS' MOTION**
13                                             **FOR ORDER AUTHORIZING AND**
     Lucky Dragon, LP                          **APPROVING HOTEL CLOSING AND**
14                                             **JOINDER TO SNOW COVERED**
                           Debtor.             **CAPITAL, LLC'S RENEWED MOTION**
15                                             **FOR RELIEF FROM THE AUTOMATIC**
                                               **STAY**
16
                                               Date of Hearing:    September 20, 2018
17                                             Time of Hearing:    9:30 a.m.

18
                                               Judge: Hon. Laurel E. Babero
19

20         PDS Gaming, LLC ("PDS")[1] and PDS Acquisition, LP ("PDS Acquisition"),[2] by and

21   through their counsel, Richard F. Holley, Esq., and Andrea M. Gandara, Esq., of the law firm

22

23   [1] PDS Gaming Corporation-Nevada, LLC, a Nevada limited liability company, is the successor in
     interest by way of conversion to PDS Gaming Corporation-Nevada, which is a wholly owned
24   subsidiary of PDS Gaming, LLC, a Minnesota limited liability company, and successor in interest
     by way of conversion to PDS Gaming Corporation (collectively referred to as "PDS"). PDS
25   Acquisition, LP is the sole member of PDS Holding, LLC, a Nevada limited liability company;
     PDS Holding, LLC is the sole member of PDS Gaming, LLC.

26   [2] On or about December 13, 2016, PDS Gaming Corporation-Nevada, as seller, entered into a
     Purchase and Sale Agreement with PDS Lendco, LP, as purchaser ("PDS Lendco"), pursuant to
27   which it sold to PDS Lendco the equipment that is this subject of Lease Schedule 2 and assigned
     to PDS Lendco all of its rights under Lease Schedule No. 2. PDS Acquisition, LP is the successor
28   to PDS Lendco.

Holley Driggs Walch Fine Wray Puzey & Thompson, hereby file their *Response to Debtors' Motion for Order Authorizing and Approving Hotel Closing* that was filed on September 13, 2018 [ECF No. 806], and joinder ("Joinder") to Snow Covered Capital, LLC's ("Snow Covered" or "SCC") *Renewed Motion for Relief from the Automatic Stay*, filed on June 15, 2018 [ECF No. 508].

## I.    PROCEDURAL HISTORY

1.    On February 16, 2018, Lucky Dragon, Hotel & Casino, LLC (the "LLC") filed a Chapter 11 petition for relief.

2.    On February 21, 2018, Lucky Dragon, LP (the "LP") filed a Chapter 11 petition for relief, initiating Case No. 18-10850-LEB, and filed a motion to jointly administer its case with Lucky Dragon, Hotel & Casino, LLC's case, which the Court granted at hearing on February 21, 2018.[3]

3.    On June 15, 2018, Snow Covered filed a *Renewed Motion for Relief from the Automatic Stay* ("Snow Covered's Stay Relief Motion") [ECF No. 508].

4.    On July 5, 2018, the Official Committee of Unsecured Creditors (the "Committee") filed its opposition to Snow Covered's Stay Relief Motion [ECF 545].

5.    On July 26, 2018, the Debtors filed the *Second Amended Plan of Reorganization for Lucky Dragon Hotel & Casino, LLC and Lucky Dragon, LP Under Chapter 11 of the Bankruptcy Code* (the "Plan") [ECF No. 610], to which Debtors attached Exhibit A, a list of executory contracts to be rejected in connection with the Debtors' Second Amended Chapter 11 Plan.

6.    Pursuant to Article V of the Plan, on September 10, 2018, the Debtors' held an auction (the "Auction") of their assets to pay creditors. Snow Covered was the successful bidder for the LP's assets, including the Property;[4] however, the LLC's assets (which are unencumbered) were unsold.

---

[3] Together, Lucky Dragon Hotel & Casino, LLC and Lucky Dragon, LP are referred to as "Debtors".

[4] Property is a term defined in the Second Amended Plan. See ECF No. 610.

- 2 -

03102-20/2098581.docx

7.    On September 7, 2018, Debtors filed *Plan Supplement for the Second Amended Plan of Reorganization for Lucky Dragon Hotel & Casino, LLC and Lucky Dragon, LP Under Chapter 11 of the Bankruptcy Code* [ECF No. 764].

8.    On September 13, 2018, Debtors filed *Motion for Order Authorizing and Approving Hotel Closing*, to "shutter the Hotel and preserve the LLC's remaining assets for the estates." *See* ECF No. 806.

9.    On September 13, 2018, PDS and PDS Acquisition filed their *Objection to Confirmation of Second Amended Plan of Reorganization for Lucky Dragon Hotel & Casino, LLC and Lucky Dragon, LP Under Chapter 11 of the Bankruptcy Code*, contending that Debtors do not have any means to pay PDS in full for the unpaid amount of its administrative claim on the effective date of the Plan as required, pursuant to Art. 2, Sec. A of the Plan, and Section 1129(a)(9)(A) of the Bankruptcy Code. *See* ECF No. 818.

10.    On September 17, 2018, the Debtors filed a *Notice of Non-Opposition to the Renewed Motion of Snow Covered Capital, LLC for Relief from the Automatic Stay* [ECF No. 826]. The Official Committee of Unsecured Creditors **did not** join in or file its own notice of non-opposition and therefore presumably intends to press its opposition to Snow Covered's Stay Relief Motion [ECF No. 545].

11.    On September 18, 2018, Debtors filed their *Motion for the Entry of an Order Authorizing the Debtors to Reject Certain Executory Contacts* [ECF No. 834]. Hearing has been set on shortened time for September 26, 2018.

## II.    ARGUMENT

On August 23, 2016, Debtors entered into a Master Lease Agreement ("Master Lease") with PDS. A true and correct copy of the Master Lease is attached to the Second Cleary Decl.[5] as **Exhibit "1"**. The Master Lease establishes the general terms and conditions by which PDS agreed

---

[5] See ECF No. 762, *Declaration of Peter D. Cleary in Support of PDS Gaming LLC and PDS Acquisition, LP'S Objection to Notice Regarding (A) Executory Contracts and Unexpired Leases Which may be Assumed and Assigned Pursuant to Section 365 of the Bankruptcy Code, (B) Amounts Required to Cure Defaults Under Such Executory Contracts and Leases, and (C) Related Procedures* that was filed on September 7, 2018.

- 3 -

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

to lease equipment as more particularly described in each Lease Schedule. *See* Ex. "1" (Master Lease, ¶ 3). The Debtors entered into three Lease Schedules with PDS for various equipment: (1) Lease Schedule 1 (Central Plan) ("Lease Schedule 1") for equipment and parts that comprised the heating and cooling systems at 300 West Sahara Avenue, Las Vegas, Nevada ("Premises"); (2) Lease Schedule 2 (F&E) ("Lease Schedule 2") for the lease of the surveillance and monitoring systems at the Premises; and (3) Lease Schedule 3 (Gaming Devices) ("Lease Schedule 3") for Class III Gaming Devices at the Premises.[6] True and correct copies of Lease Schedule 1, Lease Schedule 2, and Lease Schedule 3 are attached to the Second Cleary Decl. [ECF No. 762] as **Exhibit "2"**, **Exhibit "8"**, and **Exhibit "17"**, respectively. Each Lease Schedule incorporates by reference the terms of the Master Lease. *See* Ex. "1" (Master Lease, ¶ 3).

Pursuant to section 6 of the Master Lease, PDS could require the execution of an intercreditor agreement between PDS, Lessee and Lessee's secured lender in a form acceptable to PDS. Prior to PDS's transaction with the Debtors, the Debtors had obtained financing from Snow Covered and provided Snow Covered with a blanket lien on the Debtors' assets. Accordingly, PDS exercised its rights under section 6 of the Master Lease Agreement and required that the Debtors, PDS and their lender, SCC, to execute an acceptable intercreditor agreement. To that end, the Debtors and SCC entered into an Intercreditor Agreement with PDS, dated August 23, 2016, expressly acknowledging that the PDS Equipment was the sole and exclusive assets of PDS and that SCC had no interest in the PDS Equipment. The Intercreditor Agreement further subordinated any interest, security interest, or lien SCC held or would later acquire in the PDS Equipment to PDS and recognized PDS's interest in the PDS Equipment as superior and senior to SCC. As part of the Intercreditor Agreement, SCC also executed UCC-3s expressly assigning any security interest it may have in the PDS Assets to PDS. *See* First Cleary Decl.[7]

---

[6] When the Debtors ceased gaming operations, the gaming equipment that is the subject of Lease Schedule 3 was returned to PDS. The gaming equipment has since been liquidated by PDS and no further obligation is owing by the Debtors under Lease Schedule 3. *See* Second Cleary Decl. [ECF No. 762, at ¶46].

[7] *See* ECF No. 423, *Declaration of Peter D. Cleary in Support of Limited Opposition to Application for the Entry of Interim and Final Orders Authorizing the Debtors to Obtain Financing Pursuant to 11 U.S.C. Sections 105, 361, 362 and 364* that was filed on May 22, 2018.

03102-20/2098581.docx

Pursuant to the Debtors' Motion for Order Authorizing and Approving Hotel Closing, the Debtors have requested an order from the Court permitting closure of the Hotel and to immediately stop the administrative costs of operating the facility. [ECF No. 806]. Supposedly, this is being done to facilitate the orderly transition of the ownership of the Property to Snow Covered [ECF No. 806 at 4:26-27]. PDS and PDS Acquisition are informed and believe that the DIP Lender is no longer providing debtor-in-possession financing to pay for operational expenses. PDS and PDS Acquisition are concerned that, with the cessation of debtor-in-possession financing and closure of the Hotel, the Debtors will cease providing insurance on the Property, cancel utilities that maintain climate-controlled environment, or security to protect and preserve the Property and the equipment of PDS and PDS Acquisition located therein. As a result, the Property and its contents will be at serious risk.

Moreover, the Debtors are posturing to absolve themselves from any responsibility for maintenance, preservation or protection of the equipment of PDS, PDS Acquisition and others, pursuant to Debtors' very recently filed *Motion for Entry of an Order Authorizing Debtors to Reject Certain Executory Contracts* ("Motion to Reject Executory Contracts") [ECF No. 834], set for hearing on Wednesday, September 26, 2018 at 9:30 a.m.

To the extent the Committee successfully opposes the renewed motion for stay relief filed by Snow Capital and the Court grants the Debtors' Motion to Reject Executory Contracts, the Debtors will remain the owners of the Property with no means or intent of preserving the Property and with no responsibility for preserving, protecting or maintaining its content, including the equipment that is the subject of the PDS Lease. At the same time, Snow Capital will not have an ownership interest in the Property, or in the equipment that is the subject of the rejected equipment leases. As such, not only will the Property be at risk, but the equipment that is the subject of the PDS Leases will be at considerable risk. The equipment subject to the PDS Leases includes the central plant, which is essential to the operation of the facility.

Based on these concerns, PDS and PDS Acquisition joins in and supports the renewed Motion for Relief from the Automatic Stay filed by Snow Covered. Relief from stay will enable Snow Covered to foreclose on the Property, for which it was the successful bidder pursuant to a

- 5 -

credit bid at the recent Auction, and to proceed to foreclosure. In the interim, Snow Covered may choose to seek the appointment of a receiver who can protect and preserve the Property and its contents pending foreclosure. This scenario will also enable PDS to enforce the Intercreditor Agreement with Snow Covered.

### III.    CONCLUSION

Based on the above, PDS and PDS Acquisition joins in and supports the Renewed Motion for Relief from Automatic Stay filed by Snow Covered.

Dated this ___19th___ day of September 2018.

**HOLLEY DRIGGS WALCH**
**FINE WRAY PUZEY & THOMPSON**

Richard F. Holley, Esq. (NV Bar No. 3077)
Andrea M. Gandara, Esq. (NV Bar No. 12580)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile: 702/791-1912

*Attorneys for PDS Gaming LLC and PDS*
*Acquisition, LP*

03102-20/2098581.docx

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Holley Driggs Walch Fine Wray Puzey & Thompson, and that on the 19th day of September 2018, I caused to be served a true and correct copy of RESPONSE TO DEBTORS' MOTION FOR ORDER AUTHORIZING AND APPROVING HOTEL CLOSING AND JOINDER TO SNOW COVERED CAPITAL, LLC'S RENEWED MOTION FOR RELIEF FROM THE AUTOMATIC STAY in the following manner:

☒    (ELECTRONIC SERVICE)  Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐    (UNITED STATES MAIL)  By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

☐    (OVERNIGHT COURIER)  By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐    (FACSIMILE)  That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

_____
An employee of Holley Driggs Walch Fine
Wray Puzey & Thompson

03102-20/2098581.docx