Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Connor H. Shea, Esq.
Nevada Bar No. 14616
Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: (702) 382-2101
Facsimile: (702) 382-8135
Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| In re: | ) | Lead Case No.: 18-10792-LEB |
| | ) | |
| Lucky Dragon Hotel & Casino, LLC, | ) | Joint Administration with: |
| | ) | Case No.:    18-10850-LEB |
| Debtor, | ) | |
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | Hearing Date: November 20, 2018 |
| Lucky Dragon, LP | ) | Hearing Time: 9:30 a.m. |
| | ) | |
| Debtor. | ) | |
| | ) | |

**FIRST AND FINAL**
**STATEMENT OF SERVICES RENDERED AND EXPENSES INCURRED OF**
<u>**INNOVATION CAPITAL, LLC AS FINANCIAL ADVISOR FOR THE DEBTORS**</u>

Innovation Capital, LLC ("**Innovation**"), financial advisor for Lucky Dragon Hotel & Casino, LLC, and Lucky Dragon, LP, the above-captioned debtors (collectively, the "**Debtors**") in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"), respectfully submits its first and final application ("**Fee Application**") for allowance and payment of compensation for professional services performed by Innovation, including a "Monthly Retainer Fee" (as defined herein), an "M&A Transaction Fee" (as defined herein) and for reimbursement of its actual and necessary expensed incurred. This Fee Application is filed pursuant to Sections 328(a) and 330 of the Bankruptcy Code, Bankruptcy Rule 2016, Local Rule 2016, and this Court's Order

1

17628259.5

Authorizing Employment of Innovation Capital As Financial Advisor To The Debtors As Of April 9, 2018, Docket No. 463, (the "**Innovation Employment Order**").

**SUMMARY OF PROFESSIONAL COMPENSATION
AND REIMBURSEMENT OF EXPENSES REQUESTED**

**THIS REQUEST:**

| | |
|---|---:|
| Monthly Retainer Fee for Month of September 2018 | $12,500.00 |
| M&A Transaction Fee | $350,000.00 |
| (Credit for Monthly Retainers Paid, incl. unpaid September 2018) | ($75,000.00) |
| Expenses Incurred | $3,146.89 |
| **Total Fees and Costs Incurred and Unpaid** | **$290,646.89** |

**INTRODUCTION**

1. This Fee Application constitutes the first and final request for fees and costs incurred by Innovation in performing financial advisory services in these Chapter 11 Cases as described in the Debtors' Application (the "**Application**") to employ Innovation as financial advisors for the Debtors as of April 9, 2018 (the "**Retention Date**"). This Application covers the period from the Retention Date through October 3, 2018 (the "**Compensation Period**").

2. This Fee Application has been prepared in accordance with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330* adopted by the Executive Office for United States Trustees, as referenced by the *Region 17 United States Trustee Guidelines*, as well as in accordance with Bankruptcy Rule 2016 and Local Rule 2016.

3. Pursuant to this Fee Application, Innovation requests approval and allowance of a Monthly Retainer Fee for the month of September 2018 at $12,500.00, reimbursement of expenses of $3,146.89 ("**Expenses**"), and approval and allowance of an M&A Transaction Fee in the amount of $275,000.00 ($350,000.00 gross amount net of credits for $75,000.00 in Monthly Retainer Fees paid through September 2018) in connection with services provided to

2

17628259.5

Debtors during the Compensation Period.

4. As detailed herein, the services provided by Innovation were necessary to the sale of substantially all of the Debtors' assets and thus, ultimately, benefiting the estate, the Debtors' creditors and other parties-in-interest.

5. During the Compensation Period, Innovation has received no payments and no promises of payment from any sources other than Debtors for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Fee Application. There is no agreement or understanding between Innovation and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.

## BACKGROUND

6. On April 13, 2018, Debtors filed the Application thereby seeking the entry of an order authorizing the retention and employment of Innovation as a financial advisor to Debtors as in these Chapter 11 Cases pursuant to the terms set forth in the financial advisory engagement letter dated April 9, 2018 (the "**Financial Advisory Agreement**") attached as Exhibit "1" to the Declaration of Matthew J. Sodl In Support of Debtors' Application For Entry of an Order Authorizing the Employment and Retention of Innovation Capital as Financial Advisor to the Debtors as of April 9, 2018, Docket No. 245, as subsequently amended per the revised terms described in the Innovation Employment Order.

7. The Application was granted on May 30, 2018. See Docket No. 463.

8. Pursuant to the terms of the Financial Advisory Agreement (as approved by the Innovation Employment Order), Innovation was authorized to receive (among other scenarios provided for therein):

3

17628259.5

(a)  Monthly Retainer Fee: Under the terms of the Financial Advisory Agreement, the Debtors agree to pay Innovation a monthly retainer fee (the "**Monthly Retainer Fee**") in the amount of twelve thousand and five hundred dollars ($12,500) per month upon the entry of an Order approving the Application. The first monthly payment shall be due upon the entry of an order by the Court approving this Agreement with subsequent monthly payments to be due on each monthly anniversary thereof. All monthly payments received by Innovation shall be credited against the M&A Transaction Fee in Section 3(b) below.

(b)  M&A Transaction Fee: If a transaction takes the form of a sale, merger or acquisition of the Debtors and/or a change of control resulting in the sale, merger or acquisition of more than 50.0% of either the economic or voting interests in the Debtors to a third-party or affiliated party, the Debtors agree to pay Innovation a fee based on the following:

   i.  Three-quarters of one percent (0.75%) of the first sixty million ($60,000,000) in aggregate consideration received by the Debtors or claim amount (i.e., credit bid) made by the Debtors' creditors (collectively, the "**Consideration**"), subject to a minimum fee of three-hundred and fifty thousand dollars ($350,000); plus

   ii. One and one-half percent (1.50%) of the Consideration greater than sixty million ($60,000,000), up to seventy million ($70,000,000); plus

   iii. Two and one-half percent (2.50%) of the Consideration greater than seventy million ($70,000,000).

(c)  Restructuring Transaction Fee: If a transaction takes the form of a recapitalization, restructuring, reorganization, or refinancing of all or any material portion of the Debtors' liabilities, the Debtors agree to pay Innovation a fee equal to one million dollars

4

17628259.5

($1,000,000) (the "**Restructuring Transaction Fee**"). For purposes of clarification, the Restructuring Transaction Fee shall apply to a transaction where: (i) existing creditor claims are contributed and treated as consideration, and (ii) any existing EB-5 investors participate in an acquisition or a Plan of Reorganization. Per the Innovation Employment Order, the Restructuring Transaction Fee shall be reduced by 25% to $750,000.00 in the event the Debtors reorganize around a transaction facilitated by the EB-5 investors.

(d) <u>Limited Fee</u>: In the event the Debtors engages in an M&A Transaction with any of the following parties: (i) Christian Goode; (ii) Rachel Zou; (iii) Felix Fu; (iv) Yaping Wang; and any of their related entities, affiliates or assigns, Innovation shall receive the following limited fees (the "**Limited Fees**"):

i. One-quarter of one percent (0.25%) of the first fifty-five million ($55,000,000) in Aggregate Consideration paid, plus;

ii. One-half of one percent (0.50%) of the Aggregate Consideration greater than fifty-five million ($55,000,000), up to sixty million ($60,000,000) plus;

iii. One and one-half percent (1.50%) of the Aggregate Consideration greater than sixty million ($60,000,000), up to seventy million ($70,000,000) plus;

iv. Two and one-half percent of the Aggregate Consideration greater than seventy million ($70,000,000).

(together, the "**Fee Structure**")

9. Pursuant to the terms of the Financial Advisory Agreement, as approved by the Innovation Employment Order, Innovation was also authorized to receive reimbursement of all

5

17628259.5

necessary and reasonable out-of-pocket expenses incurred during the engagement.

10. On July 9, 2018, the Debtors filed their second amended disclosure statement and second amended plan of reorganization (the "**Plan**"), which outlined the auction by which the Debtors intended to sell the Resort and Property to the highest and best bidder.

11. On July 20, 2018, the Court approved certain bid procedures related to the sale of the Resort and Property, and set a sale date (the "**Sale**") for the Debtors to auction the Resort and Property to the highest and best bidder on September 10, 2018 at 10:00 a.m. (prevailing Pacific Time) at the law offices of Brownstein Hyatt Farber Schreck, LLP in Las Vegas, Nevada. The bid procedures set forth the requirements under which a Qualifying Bid could be made to participate in the Sale, with a Qualifying Bid submission deadline of September 3, 2018 (the "**Qualifying Bid Deadline**").

12. On September 3, 2018, the Qualifying Bid Deadline, Innovation received Qualifying Bids from three potential bidders (each a "**Third-Party Bidder**"). The Third-Party Bidders provided satisfactory evidence of financial wherewithal, submitted a $2.5 million deposit and mark-up of the form asset purchase agreement (the "**APA**"). The Third-Party Bidder's mark-up of the form APA contained certain conditions that, in the opinion of Innovation, if given the opportunity to negotiate with the Debtors, could have been resolved and deemed acceptable to the Debtors.

13. On September 4, 2018, Snow Covered Capital, LLC ("**SCC**") submitted a credit bid of $32 million to purchase the real property owned by Lucky Dragon, LP, and due to the credit bid amount, one of the Third-Party Bidders subsequently withdrew its bid.

14. On September 10, 2018, the Sale took place (the "**Auction**"). Multiple rounds of bidding occurred at the Auction, including numerous bids made by Trans World Corporation as

well as SCC. SCC ultimately won the Auction by upping its initial credit bid to $35 million.

**INNOVATION SUMARY OF SERVICES RENDERED**

15. Innovation provided a broad range of necessary financial advisory services in its capacity as financial advisor to the Debtors for an M&A Transaction or a Restructuring Transaction (as defined in Financial Advisory Agreement) (collectively, a "**Transaction**").

16. After Innovation's retention by the Debtors in April 2018, and in the interest of conducting a comprehensive and efficient process to effectuate a Transaction to maximize value for the Debtors and their creditors, Innovation immediately began creating necessary marketing materials. After completion of the marketing materials, Innovation approached potential bidders with confidentiality agreements and confidential materials to gauge interest in a Transaction.

17. From its retention in April 2018 through September 10, 2018, (the Sale date), Innovation distributed marketing materials and communicated with potential bidders to gauge interest in a Transaction. During that time, Innovation approached 317 potential bidders with a confidentiality agreement and teaser providing summary information of the Debtors, the Las Vegas market and a Transaction; signed 28 binding confidentiality agreements with potential bidders and distributed 28 confidential investor presentations ("**CIP**") to potential bidders. Additionally, Innovation facilitated the due diligence efforts of potential bidders and provided daily telephonic update calls to SCC. Innovation assisted the Debtors in creating an electronic data storage room with confidential diligence information for potential bidders, coordinated with the Debtors in providing responses to potential bidders' diligence questions, conducted property tours and held numerous conference calls. As a result of these efforts, Innovation received various proposals from interested parties under both an M&A Transaction structure

17628259.5

and Restructuring Transaction structure. However, no definitive agreements were entered into by Debtors with any party.

18. On September 3, 2018, the initial bid deadline, Innovation received three Qualifying Bids from Third-party Bidders. These Third-party Bidders provided satisfactory evidence of financial wherewithal, submitted a $2.5 million deposit and mark-up of the form APA. The Third-party Bidders' mark-up of the form APA contained certain conditions that, in the opinion of Innovation, if given the opportunity to negotiate with the Debtors, could have been resolved and deemed acceptable to the Debtors. Innovation has conducted numerous auctions processes and the form of the bid received by the Third-party Bidder is consistent with those received in other comparable transactions.

19. In additional to the three Qualifying Bids, SCC also submitted its credit bid on September 4, 2018, in the amount of $32 million. As a result of SCC's credit bid, one of the Third-Party Bidders subsequently withdrew its bid.

20. On September 10, 2018, Innovation conducted the Sale, whereby two Third-party Bidders and SCC went through multiple rounds of bidding before SCC emerged as the winning bidder by using its credit bid rights to bid $35 million.

21. Innovation believes that it has satisfied all parameters necessary to receive an M&A Transaction Fee. Through its Transaction process: (a) Innovation successfully brought three Third-party Bidders to the Sale; and (b) created value to the estate, Debtors and their creditors (which included daily telephonic update calls with SCC). Given the nature and value of the services that Innovation provided to the Debtors as described herein, Innovation seeks approval of an unpaid September 2018 Monthly Retainer Fee of $12,500.00 and a gross M&A Transaction Fee (see Paragraph 3(b) in Innovation's Financial Advisory Engagement letter) in

17628259.5

the amount of $350,000.00 (prior to 100.0% credit of the Monthly Retainer Fees received. The amount of Monthly Retainer Fees received by Innovation was $62,500.00 and, together with the unpaid September Monthly Retainer Fee of $12,500.00, total Monthly Retainer Fees equal $75,000.00. Crediting the $75,000.00 from the gross M&A Transaction Fee of $350,000.00, results in a net M&A Transaction Fee of $275,000.00. Additionally, Innovation incurred $3,146.89 in out of pocket expenses that have not yet been reimbursed.

22. All services rendered by Innovation were performed pursuant to its retention by Debtors. Innovation provided a broad range of necessary financial advisory services that brought value to the Debtors and their creditors. In summary, the main categories of services performed by Innovation are described below:

A.    <u>Marketing Materials</u>

23. Innovation created various documents to market a Transaction to potential bidders including a teaser and CIP. The marketing materials provided potential bidders with information on the Transaction, the Debtors' assets, local gaming market, property management, financial information, competitive environment, and demographic and economic profile. Innovation assisted the Debtors in creating an electronic data storage room with confidential diligence information for potential bidders. Innovation also provided periodic updates the property's performance to potential bidders. Innovation approached 317 potential bidders with a confidentiality agreement and teaser providing summary information of the Debtors, the Las Vegas market and a Transaction; signed 28 binding confidentiality agreements with potential bidders and distributed 28 CIPs to potential bidders with signed confidentiality agreements.

B.     Financial Due Diligence

24. Innovation coordinated and facilitated the Debtors' responses to follow-on due diligence requests from potential bidders for the Debtors' assets and their advisors through numerous teleconference calls and property tours.

C.     Sale Process

25. Innovation gauged potential bidders' interest in a Transaction with the Debtors and identified new potential bidders throughout the Sale process. Innovation held numerous conversations with the various potential bidders to market the Debtors' assets and to discuss the sale process. Innovation distributed and negotiated confidentiality agreements with potential bidders who expressed an interest in the process and subsequently received diligence information.

26. Innovation managed discussions with potential bidders in an effort to arrive at potential bids in an expeditious and optimal manner taking into account all relevant considerations surrounding the sale process. Innovation also provided daily telephonic update calls regarding the sale process with SCC. All of these measures were taken to expedite the sale process.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

27. Through the Innovation Employment Order, this Court authorized the Fee Structure of the Financial Advisory Agreement pursuant to Sections 328(a) of the Bankruptcy Code. Section 328(a) provides, in pertinent part, that "the trustee, or committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on

17628259.5

a fixed percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, Section 328 permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions. In <u>In re Nat'l Gypsum Co.</u>, 123 F.3d 861 (5th Cir. 1997), the Fifth Circuit explained:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present section 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present section 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

<u>Id.</u> at 862 (citations omitted).

28. Because Innovation's Fee Structure was approved by this Court pursuant to Section 328(a), and because there have been no unanticipated developments warranting that this Court revisit the Innovation Employment Order, this Court should approve this Fee Application. "[A] bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under [Section] 328." <u>In re B.U.M. Intern., Inc.</u>, 229 F.3d 824, 829 (9th Cir. 2000) (citing <u>Pitrat v.</u>

Reimers (In re Reimers), 972 F.2d 1127, 1128 (9th Cir. 1992)).  Section 328(a) provides that a court may only allow for compensation different than that which been approved pursuant to Section 328(a) where, after the conclusion of such employment, the terms and conditions of a professional's employment prove "to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  In re Reimers, 972 F.2d 1127 (9th Cir. 1992) (citing In re Confections By Sandra, Inc., 83 B.R. 729 (B.A.P. 9th Cir. 1987) (absent evidence of unanticipated developments, a bankruptcy court abuses its discretion by altering a previously approved fee arrangement); Seiler v. First Nat'l Bank of Babbitt (In re Benassi), 72 B.R. 44, 47-48 (Bankr. D. Minn. 1987)).  As there is no basis for determining that Innovation's employment proved to be improvident in light of developments not unreasonably anticipated, the Innovation Employment Order need not be revisited.

29.    As stated previously, pursuant to Innovation's employment Application and its Financial Advisory Agreement, Innovation is entitled to receive its September 2018 Monthly Retainer Fee payment and an M&A Transaction Fee as it satisfied all parameters necessary to receive both fees: various Third-party Bidders were deemed Qualified Bidders and participated in the Sale along with SCC's credit bid.

30.    As reflected in the Fee Structure, it is not the general practice of investment banking firms, including Innovation, to keep detailed time records similar to those customarily kept by attorneys.  Rather, investment banking firms are generally compensated on a transactional basis because the value added by such services provided is inadequately measured by hours worked.  As set forth above, Innovation has provided services to the Debtors and believes it is entitled to allowance and approval of the Monthly Retainer Fees, reimbursement of the Expenses, and

17628259.5

payment of an M&A Transaction Fee.

31. Innovation does not maintain, in the normal course of providing financial advisory and investment banking services to its clients, detailed written time records, and does not bill its clients based on the number of hours expended by its professionals. Moreover, pursuant to the Financial Advisory Agreement as approved by the Innovation Employment Order, Innovation was not required to maintain written time records of the services rendered and time expended by each of Innovation's professionals.

32. Accordingly, Innovation respectfully requests that its application for compensation and reimbursement of expenses be authorized pursuant to the form of order attached hereto as **Exhibit 1**.

## CONCLUSION

WHEREFORE, Innovation respectfully requests that the Court enter an Order pursuant to Section 328(a) and 330 (as applicable) of the Bankruptcy Code for:

1. Allowance and approval of Innovation professional compensation in the amount of $12,500.00 for the Monthly Retainer Fee payment unpaid for the month of September 2018;

2. Reimbursement of actual and necessary Expenses in the amount of $3,146.89;

3. Allowance and approval of the M&A Transaction Fee in the amount of $350,000.00 (with credit for 100% or $75,000.00 of the Monthly Retainer Fee amounts, including the unpaid September 2018 Monthly Retainer Fee) resulting in a net fee payable of $275,000.00; and

/ / /

/ / /

/ / /

/ / /

17628259.5

4. Granting such other and further relief as is just and proper.

Dated this 19th day of October, 2018.

Submitted by:

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Connor H. Shea, Esq.
Nevada Bar No. 14616
100 North City Parkway, Suite 1600
Las Vegas, NV 89106
Attorneys for the Debtors

14

17628259.5