ROBERT E. ATKINSON, ESQ., Bar No. 9958
Email: robert@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E Warm Springs Rd Suite 130
Las Vegas, NV 89119
Telephone: (702) 614-0600
*Attorney for Brian D. Shapiro, Trustee*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA**

| In re: | Case No. 18-10792-mkn |
|---|---|
| LUCKY DRAGON HOTEL & CASINO, LLC, | Chapter 7 |
| Debtor. | **MOTION TO SELL TANGIBLE BUSINESS PERSONAL PROPERTY** |
|  | Hearing Date:  OST REQUESTED |
|  | Hearing Time:  OST REQUESTED |

Chapter 7 trustee BRIAN D. SHAPIRO, by and through counsel, hereby moves this Court for an order approving the sale of all tangible business personal property owned by Debtor that is currently located at the Debtor's former site of operations (300 W. Sahara Avenue, Las Vegas NV), if any exists there, excluding any physical business records of Debtor and any gambling marker documents that may still be located there.

This motion is based on: the Memorandum of Points and Authorities contained herein; the pleadings and papers on file in this case; the Purchase and Sale Agreement attached hereto as Exhibit 1; the contemporaneously-filed supporting DECLARATION OF BRIAN D. SHAPIRO ("*Trustee's Decl.*"); and any oral arguments made at the time of hearing on this matter.

# # # # #

DATED: April 5, 2019            **ATKINSON LAW ASSOCIATES LTD.**

By: _____/s/ Robert Atkinson_____
ROBERT E. ATKINSON, ESQ.
Nevada Bar No. #9958
*Attorney for Brian D. Shapiro, Trustee*

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    BACKGROUND FACTS

1.  On February 16, 2018 ("*Petition Date*"), debtor LUCKY DRAGON HOTEL & CASINO, LLC ("*Debtor*") filed for chapter 11 bankruptcy relief, initiating this bankruptcy case ("*Bankruptcy Case*") and creating the above-captioned bankruptcy estate (the "*Bankruptcy Estate*").  [DE #1.]

2.  The Debtor scheduled the following personal property: 'Office Furniture and hotel/room furniture' in the amount of $10,000.00.[1]  [DE #76.]

3.  On November 27, 2018, the Bankruptcy Case converted to chapter 7.  [DE #1016.]  The Trustee is the appointed chapter 7 trustee of the Bankruptcy Estate.  [DE #1019.]

4.  The Trustee investigated the assets and requested an asset list from the Debtor's representative and Debtor's counsel identifying specific items.  However, such an asset list was not provided to the Trustee and/or was advised that it was not available.  Debtor's principal resigned at prior to the case conversion, and no persons are left at Debtor with whom to interact.  Based upon discussions with Debtor's counsel, a majority of the personal property was purchased prior to the formation of the Debtor and was not transferred to the Debtor.  [Trustee's Decl. at ¶ 6.]

5.  The Trustee's counsel went to the Real Property and took a long tour, including the casino, the hotel, and back-office areas, and saw some used office desks and cubicles that may fit the "Office Furniture" description in the schedules.[2]  [Id. at ¶ 7.]

6.  The former site of operations located at 300 W. Sahara Avenue, Las Vegas NV ("*Real Property*") is currently owned by Snow Covered Capital LLC ("*SCC*").  SCC is in the process of selling the Real Property to a third party, and as part of that sale SCC is seeking to

---

[1] The schedules also identify a "Surveillance system; computer software" and "Casino Equipment", but upon investigation those assets were not, or are no longer are, property of the LLC Debtor.  [Trustee's Decl. at ¶ 5.]

[2] PDS Gaming's counsel provided the Trustee a document showing that PDS claims ownership of the gaming tables and many other items located on the site.

ensure that nothing remains at the site that could be subject to a subsequent title dispute. [Id. at ¶ 8.]

7. SCC has agreed to purchase the tangible personal property of the Debtor that may be located at the Real Property (if any) for the $10,000 scheduled value.

## II.    MAJOR TERMS OF THE SALE

8. The Trustee has entered into the purchase and sale agreement attached hereto as **EXHIBIT 1** ("*PSA*") to all tangible business personal property owned by Debtor that is currently located at the Debtor's former site of operations (300 W. Sahara Avenue, Las Vegas NV), if any exists there[3] (the "*Assets*") to Snow Covered Capital, LLC ("*SCC*" or "*Buyer*"). The price paid by Buyer is **$10,000.00** ("*Purchase Price*"). The sale is contingent on Bankruptcy Court Approval. [*See* Exhibit 1.]

9. The Assets are being sold in as-is condition, with no representations or warranties including but not limited to title, made by the Bankruptcy Estate or the Trustee, including whether any Assets even exist at all. [Id. at Section 1.06.]

10. The sale is contemplated as a private sale.[4]

11. The foregoing is merely a summary of the major material terms of the PSA and is qualified in its entirety by the PSA itself, which contains many terms.

---

[3] Excluding: (i) any physical business records of Debtor; and (ii) any gambling marker documents still located there.

[4] However, if any party-in-interest opposes the Sale based on price or otherwise seeks to overbid (an "*Objecting Party*"), then the Trustee shall entertain an overbid, but only from that party and on the following conditions: (i) the Objecting Party pre-qualifies by depositing $15,000.00 in good funds with the Trustee at least one business day prior to the Sale Hearing; (ii) the Objecting Party can place an overbid at the Sale Hearing in the minimum amount of $15,000.00; (iii) overbids will increase in $5,000.00 increments thereafter; and (iv) the Objecting Party understands and agrees with all terms of Section 1.06 below. The winning bidder must pay the remaining portion of the winning bid within five (5) business days. [*See* PSA at Section 1.05.]

### III. LEGAL AUTHORITIES & ARGUMENT

12. A bankruptcy trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). This provision generally allows for the sale of property of the estate outside the ordinary course of business, subject to Court approval, where the proposed sale is a sound exercise of business judgment and when the sale is proposed in good faith and for fair value. In re Air Beds, Inc., 92 B.R. 419 (9th Cir. B.A.P. 1998).

13. As the owner of the Real Property, SCC is the 'natural buyer' of the Assets that may be located there.

14. No known lienholder is known to exist for the Assets.[5] The sale is thus being made pursuant to 11 U.S.C. § 363(b).

15. The sale is being made at the scheduled value for the Office Furniture.

16. Accordingly, the Trustee, in his business judgment, believes that: (i) that the terms of the sale constitute a fair and reasonable deal for the Bankruptcy Estate; and (ii) consummation of the sale of the Assets is in the best interest of the Bankruptcy Estate and the creditors. [Id. at ¶ 9.]

17. The Trustee also seeks to have the proposed sale of the Assets be approved as a sale being made in good faith for the purposes of 11 U.S.C. § 363(m).

### IV. WAIVER OF 14-DAY STAY

18. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

19. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Bankruptcy Rule 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory

---

[5] SCC previously filed a motion to be awarded a super-priority claim against all assets of both the LLC Debtor and the LP Debtor. However, to facilitate the sale, SCC has agreed to waive its super-priority claim, only as against the Assets. [*See* PSA at Section 1.07.]

-4-

Committee Notes are silent as to when a court should 'order otherwise' and eliminate or reduce the 14-day stay, Collier on Bankruptcy suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy, § 6004.10 (15th rev.).

20. Therefore, in the absence of any opposition to this motion being filed, the 14-day stay of Bankruptcy Rule 6004(h) should be waived.

### V.  RELIEF REQUESTED

21. By this Motion, the Trustee seeks the entry of an order: (i) approving the sale of the Assets to Buyer, on the terms proposed in the PSA; (ii) deeming the sale to have been made in good faith and thus afforded the protections of 11 U.S.C. § 363(m); and (iii) waiving the 14-day stay of Bankruptcy Rule 6004(h).

# # # # #

DATED: April 5, 2019                    **ATKINSON LAW ASSOCIATES LTD.**

                                                By:     /s/ Robert Atkinson
                                                    ROBERT E. ATKINSON, ESQ.
                                                    Nevada Bar No. 9958
                                                    *Attorney for Brian D. Shapiro, Trustee*

# EXHIBIT 1 to MOTION:

# PURCHASE AND SALE AGREEMENT

# PURCHASE AND SALE AGREEMENT

This purchase and sale agreement ("*Agreement*"), is made by and between seller **THE BANKRUPTCY ESTATE OF LUCKY DRAGON HOTEL & CASINO, LLC** arising from Nevada chapter 7 bankruptcy case no. 18-10792-mkn (the "*Bankruptcy Estate*"), by and through its trustee Brian D. Shapiro ("*Trustee*") (collectively, "*SELLER*"), and buyer **SNOW COVERED CAPITAL, LLC**, a California limited liability company ("*BUYER*"). Together, BUYER and SELLER may be referred to hereafter individually as a "*Party*" or collectively as the "*Parties*".

## RECITALS

WHEREAS, pursuant to 11 U.S.C. § 541, SELLER is a bankruptcy estate comprised of all legal and equitable interests of debtor Lucky Dragon Hotel & Casino, LLC ("*Debtor*"); and

WHEREAS, SELLER wishes to sell all tangible business personal property owned by Debtor located at the Debtor's former site of operations (300 W. Sahara Avenue, Las Vegas NV) (the "*Real Property*"), excluding any physical business records or marker documents;

WHEREAS, BUYER maintains that SELLER does not own any of the Assets (as defined below), because it purchased all tangible business personal property located at the Real Property at an October 30, 2018 foreclosure of the Real Property; and

WHEREAS, Debtor's Schedules estimate that the value of the office furniture and hotel furniture owned by Debtor is worth only $10,000; and

WHEREAS, this Agreement contemplates the sale of the Assets to BUYER; and

NOW, THEREFORE, the parties, intending to be legally bound, do hereby agree as follows:

## ARTICLE I. SALE AND PURCHASE

Section 1.01   Bankruptcy Court Approval Required. The Parties acknowledge that this Agreement, inclusive of the sale contemplated herein, is contingent upon Bankruptcy Court approval. The Trustee shall prepare and file a motion to obtain such approval (the "*Sale Motion*"). The Trustee shall seek to have the hearing on the Sale Motion ("*Sale Hearing*") heard on shortened time. However, if the Court declines to hold the Sale Hearing on shortened time, it shall not affect the validity of this Agreement. All Parties hereto agree not to directly or indirectly oppose the Sale Motion. If the Bankruptcy Court does not substantially approve this Agreement, then this Agreement, and all of the obligations and releases contained herein, shall be null and void.

Section 1.02   Property to be Sold. Subject to the terms and conditions herein set forth, SELLER shall sell to BUYER the following assets (the "*Assets*"):

- All tangible business personal property owned by Debtor that is currently located at the Debtor's former site of operations (300 W. Sahara Avenue, Las Vegas NV), if any.

4820-1092-3666

However, "Assets" excludes (i) any physical business records of Debtor; and (ii) any gambling marker documents. SELLER represents to BUYER that it is informed that if the receiver is in possession of any physical business records of the Debtor then Buyer and its receiver will reasonably cooperate with Seller to deliver those documents to Seller for no charge.

Section 1.03  Purchase Price. BUYER agrees to pay to SELLER the purchase price of $10,000.00 (the "*Purchase Price*") for the Assets.

Section 1.04  Remittance of Purchase Price. The Purchase Price shall be remitted to the Trustee in good funds upon execution of this document by SELLER, and in any case no later than two business days prior to the Sale Hearing. Remittance shall be made via check or wire transfer. If by check, payment shall be made to "Brian D. Shapiro, Trustee" and delivered to his office at 510 8th Street, Las Vegas NV 89101. The Trustee shall hold the Purchase Price funds in trust pending Court approval of this Agreement and the sale.

Section 1.05  Private Sale. The sale contemplated herein (the "*Sale*") is a private sale between the SELLER and the BUYER, not a public auction.

However, if any party-in-interest opposes the Sale based on price or otherwise seeks to overbid (an "*Objecting Party*"), then the Trustee shall entertain an overbid, but only from that party and on the following conditions: (i) the Objecting Party pre-qualifies by depositing $15,000.00 in good funds with the Trustee at least one business day prior to the Sale Hearing; (ii) the Objecting Party can place an overbid at the Sale Hearing in the minimum amount of $15,000.00; (iii) overbids will increase in $5,000.00 increments thereafter; and (iv) the Objecting Party understands and agrees with all terms of Section 1.06 below. The winning bidder must pay the remaining portion of the winning bid within five (5) business days.

BUYER agrees that the Trustee has a duty to maximize the value of Bankruptcy Estate assets. No liability of SELLER to BUYER shall accrue if a third party objects on price and is a successful overbidder. BUYER acknowledges that the Court can, *sua sponte*, call for overbids on terms different than above.

Section 1.06  As-Is Condition; Due Diligence Waived. BUYER agrees to take the Assets in an "as-is, where-is" condition. **SELLER makes no representations or warranties to BUYER whatsoever, express or implied, regarding the Assets, including but not limited to: (1) the condition, value, usability, or nature of the Assets; (ii) whether a heretofore unknown security interest, encumbrance, or claim exists in or against the Assets; and (iii) whether any Assets even exist at all.** BUYER understands and agrees that SELLER does not have an asset schedule/list identifying any of the Assets with any particularity, has not been able to identify any of the assets with particularity, and has no specific knowledge as to the Assets.

**BUYER specifically acknowledges that SELLER has not been in possession of and may not own *any* of the tangible personal property currently located at the at the Debtor's former site of operations (i.e., they may be leased, or may be owned by**

another entity including BUYER). BUYER hereby waives any due diligence and expressly agrees that the Sale, once consummated, shall be valid even if no Assets are subsequently found to exist.

**Furthermore, BUYER acknowledges that SELLER is not in possession of the Assets. The Assets are currently in the possession of BUYER's receiver. BUYER is solely responsible for obtaining possession of the Assets after the Sale is consummated.** BUYER is also solely responsible for any and all fees, costs, and expenses to subsequently liquidate and/or move the Assets after the Sale is consummated, and SELLER shall not provide BUYER any contribution or reimbursement of any kind relating to BUYER's liquidation or movement of the Assets, nor shall BUYER have a claim for an administrative expense against SELLER for any fees or costs incurred by BUYER in such liquidation or movement.

**Furthermore, SELLER makes no representations or warranties to BUYER whatsoever, express or implied, regarding clear title to the Assets.** BUYER acknowledges that title to some or all of the Assets may be clouded (including but not limited to whether any of the Assets are actually leased, and whether any of the Assets were purchased by another entity such as Lucky Dragon LP), and that BUYER shall take title to the Assets in an as-is condition, inclusive of any title disputes that may exist.

BUYER has had an opportunity to perform due diligence on the Assets prior to execution of this Agreement, and agrees that its due diligence has been so performed.

Section 1.07  Waiver of Claim of Super-Priority Lien in the Assets. To facilitate the Sale, BUYER agrees to waive any claim for a super-priority lien, **as against the Assets only,** that BUYER may have (e.g., DE #807). This waiver is rescinded and void if this Agreement, and the Sale of the Assets to BUYER, is not approved by the Bankruptcy Court.

Section 1.08  Consummation. Upon Bankruptcy Court approval of this Agreement, title to the Assets shall pass to BUYER without representation or warranty. If so requested by BUYER, SELLER agrees to execute a bill of sale for the Assets, as defined in Section 1.02 above.

Section 1.09  Sale/assignment by BUYER after Consummation. At any time after consummation of the Sale, BUYER may freely sell or assign any of the Assets to any person or entity, without notice to or approval from the SELLER or the Bankruptcy Court.

## ARTICLE II. GENERAL PROVISIONS

Section 2.01  Limitation of Liability. Neither Party will be liable to the other for losses or damages (including special or consequential damages such as lost profits or loss of use) arising from any cause of action related to this Agreement, whether in contract, tort, or otherwise.

Section 2.02  Assignment and Succession. This Agreement is binding on and enforceable by each Party's successors and assignees.

4820-1092-3666

Section 2.03  Governing Law.  Any disputes between the Parties relating to or arising from this Agreement, of any kind or nature, shall be determined in the Bankruptcy Court, District of Nevada, and the parties do consent to personal jurisdiction of such court.

Section 2.04  Severability.  If any court determines that any provision of this agreement is invalid or unenforceable, any invalidity or unenforceability will affect only that provision and will not make any other provision of this agreement invalid or unenforceable.  BUYER understands and agrees that this Agreement may be approved by the Court even if BUYER is overbid.

Section 2.05  Full Integration.  The Parties actively negotiated the terms of this Agreement.  This Agreement sets forth the entire agreement of the Parties as to the Assets and the Sale.  It replaces and supersedes any and all oral agreements or statements made between the Parties relating to the Assets and the Sale, as well as any prior writings.  There are no side agreements or other agreements or contracts, oral or otherwise, between the Parties relating to the Assets or the Sale.  BUYER has relied solely on its own investigation and not on any oral or written information provided by SELLER or its agents.  Neither Party have relied upon any statements other than those specifically contained in this Agreement.

Section 2.06  Authority.  The signatory below for each Party has the authority to bind that Party.  Both Parties have had the full opportunity to have their own legal counsel review the terms and conditions of this Agreement.

Section 2.07  Modification.  This Agreement may be modified only by a writing signed by all Parties.  After Bankruptcy Court approval of this Agreement, if cannot be modified without Bankruptcy Court approval of such modification.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

4820-1092-3666

Section 2.08  Counterparts. This Agreement may be executed in a number of counterparts, each of which shall be deemed an original and all of which together shall constitute the same document. Delivery by facsimile or email of an executed counterpart shall have the same force and effect as a delivery in person of that document.

\* \* \* \* \*

IN WITNESS WHEREOF, the Parties have executed this Agreement by and through their authorized representatives.

SELLER:  **BANKRUPTCY ESTATE OF LUCKY DRAGON HOTEL & CASINO, LLC**, Nevada bankruptcy case 18-10792-mkn

By: _____  4-5-19
    Brian D. Shapiro, *Trustee*  Date

BUYER:  **SNOW COVERED CAPITAL, LLC**

Signature: _____

Printed Name: Enrique Landa

Title: Manager

Date: 04/02/19